**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____X
In re:                                                      :
                                                                :
177 Weston Road, LLC,                         :         Chapter 11
                                                                :         Case No. 11-50657
        Debtor.                                   :
_____X
Appearances:                                           :

James M. Nugent, Esq.                      :         For the Debtor
Harlow, Adams & Friedman                :
300 Bic Drive                                       :
Milford, CT 06460                               :

Julie A. Manning, Esq.                       :         For Creditor
Shipman & Goodwin                          :         Fairfield County Bank
One Constitution Plaza                     :
Hartford, CT 06103                           :
_____X

Alan H. W. Shiff, United States Bankruptcy Judge:

**MEMORANDUM AND ORDER ON BANK'S
MOTION FOR RELIEF FROM STAY**

INTRODUCTION

Creditor Fairfield County Bank ("Bank") moves for relief from the automatic stay, pursuant to §§ 362(d)(1) and(4),and 105(a) (hereafter, "Motion"), to reopen a judgment of foreclosure by sale entered by the Connecticut Superior Court and obtain a new sale date for the real property owned by 177 Weston Road, LLC (hereafter, "Debtor"). The Bank alleges that the Debtor's filing for bankruptcy protection under Chapter 11 of the Bankruptcy Code is part of a scheme to delay, hinder or defraud it. The Debtor objects, arguing that its petition was not for an improper purpose. Rather, it was filed "to obtain protection for [its] property and reorganize [its] debt" (Debtor's Objection at 3, ¶5).

Moreover, the Bank is fully secured, and the Debtor's plan will provide for the payment of the bank's allowed claim . For the reasons that follow, the Bank's Motion is denied.

BACKGROUND

Prior to the filing of this bankruptcy case, six members of the Guidera family owned real property known as 177 Weston Road in Weston, Connecticut (hereafter, the "Property"). The owners were: husband/father George C. Guidera ("George, Sr.") and wife/mother Linda Guidera, each with a one-quarter interest; and son George C. Guidera, Jr., daughter Karen E. Magee, daughter Barbara L. Schwertly, and daughter Suzanne K. Guidera, each with a one-eighth interest (collectively, the "Owners"). The Property was encumbered with four mortgages: a $360,000 first mortgage to The Wilton Bank; a $61,000 second mortgage to The Wilton Bank; a $470,000 third mortgage to the Bank; and a $305,000 fourth mortgage to The Wilton Bank.

George, Sr. was the primary payor on the note secured by the Bank's mortgage (hereafter, the "Note"). The other Owners were guarantors on the Note. One of the terms of the Bank's mortgage was that the Owners would not transfer any part of the Property without its prior written consent.

During 2009, George, Sr. stopped making payments on the Bank's Note. Despite the Bank's demand for payment, none was made to cure the default. As a result, the Bank claimed that the full amount of the Note was due. Thereafter, on January 25, 2010, it commenced a foreclosure action against the Owners. On October 12, 2010, a "Judgment of Foreclosure by Sale" was entered, and April 2, 2011 was set as the sale date (hereafter, the "Sale"). That judgement was not appealed.

On March 25, 2011, the Owners created the Debtor, a limited liability company ("LLC"). On March 28, 2011, by quitclaim deeds and without the consent of the Bank, the Owners conveyed their respective ownership interests in the Property to the Debtor/LLC in exchange for a proportionate ownership interest in the Debtor/LLC. The quitclaim deeds were recorded in the Weston Land Records on March 30, 2011. On April 1, 2011, the Debtor filed for bankruptcy protection under Chapter 11, which stayed the Sale. On April 7, 2011, the Bank filed the instant Motion.

## DISCUSSION

Section 362(d)(4) provides in relevant part:

> (d) . . . [T]he court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating . . . such stay—
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was *part of a scheme* to delay, hinder, or defraud creditors that involved . . . —
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval . . .

11 U.S.C. § 362(d)(4)(A) (emphasis added). Section 362(d)(4) is a BAPCPA-added subsection "intended to reduce abusive filings." H.R. Rep. 109-31(I) at 69 (2005), U.S. Code Cong. & Admin. News 2005, pp. 88, 138. *See In re Abdul Muhaimin*, 343 B.R. 159, 167-68 (Bankr. D. Md. 2006). The issue here is whether the Bank has satisfied the burden of proving that the filing of the petition was part of a scheme to delay, hinder, or defraud it, which involved a transfer of the Property without its consent.

"Scheme" is not defined by the Bankruptcy Code, but it is commonly defined to be:

> (1) a systemic plan; a connected or orderly arrangement, esp. of related concepts . . . .  (2) An artful plot or plan, usu. to deceive others <a scheme to defraud creditors>.

BLACK'S LAW DICTIONARY 1462 (9th ed. 2009). *See also Abdul Muhaimin*, 343 B.R. at 167 ("The common meaning of scheme as applicable in this context is; 'a plan or program of action; esp: a crafty or secret one.'" (quoting WEBSTER'S NINTH NEW COLLEGE DICTIONARY (1991))).  In other words, a scheme warranting § 362(d)(4) relief implies a level of insidiousness or deceitfulness.  Having considered the evidence adduced at trial and assessed the credibility of the witnesses, no such conclusion is warranted.

To the contrary, George, Sr., as the managing member of the Debtor, persuasively testified about the formation of the LLC, *i.e.*, one of the purposes in establishing the LLC was to have one entity holding title to the Property.  (*See* Hr'g Tr. at 94:3-14.)  He further testified that another motivating factor in transferring the Owners' interests in the Property to the Debtor/LLC was to protect his children.  (*See id.; see also id.* at 74:6-12, 14-18; 121:6-8.)  Contrary to a schemer, he candidly acknowledging that the filing of this bankruptcy case would delay paying off the Bank (*see id.* at 79:25-80:3; 121:6-10), but that by transferring the Owners' interests in the Property to the Debtor/LLC, the possibility of each Owner filing a subsequent bankruptcy case as a means of forestalling the foreclosure was eliminated.  (*See id.* at 94:4-14.)  George, Sr. also gave credible testimony about his efforts to actively and aggressively market the Property (s*ee id.* at 102:23-103:1), as well as his willingness to use funds from the sale of other property he owns to satisfy claims against Debtor.

(*See id.* at 79:23-25; *see also* Debtor's Disclosure Statement at 6, Part.F (stating that George, Sr. "has listed other valuable real estate that he owns for sale which is of more than sufficient value to pay off the entire amount of the debt on the Debtors [sic] property").)

      The Bank also moves for relief from automatic stay for cause under § 362(d)(1). While the transfer of the Owners' interests in the Property was without the Bank's consent, that fact does not warrant the conclusion that the Debtor should be deprived of the opportunity of reorganizing and, *inter alia*, paying the entire amount of the Bank's allowed claim. As noted, the Bank is fully secured (*see, e.g., id.* at 38:11-12; 48:1-5), and its interest continues to be protected. Moreover, the Debtor's plan of reorganization calls for the full payment of the Bank's Note by December 31, 2011 or "the Debtor consents to an order granting relief from [the] stay to [the Bank] allowing it to complete its pending foreclosure case in the Conn. State Court." Debtor's Plan of Reorganization (dated May 12, 2011) at 9, Art. IV, §4.7 (doc. #37). Therefore, the conclusion is warranted that cause does not exist to terminate the automatic stay under § 362(d)(1).

      Finally, nothing in the record warrants granting relief pursuant to § 105(a) of the Bankruptcy Code. *See generally In re Kalikow*, 602 F.3d 82, 96-97 (2d Cir. 2010).

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that the Bank's Motion is **DENIED**.

Dated this 22nd day of July 2011 at Bridgeport, Connecticut.

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge